1 | P a g e

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

RICHARD CHRISTOPHER JOHNSON,

    Plaintiff,

v.

CITY OF MIAMI BEACH, CHRISTOPHER AGUILA, in his individual capacity, JUAN BALCIERO, in his individual capacity, ROGER GAITAN, in his individual capacity, and EUGENIO ABAY, in his individual capacity,

    Defendants.
_____/

## VERIFIED COMPLAINT

**COMES NOW**, Plaintiff, RICHARD CHRISTOPHER JOHNSON ("Mr. Johnson"), and sues Defendants, CITY OF MIAMI BEACH, CHRISTOPHER AGUILA, JUAN BALCIERO, ROGER GAITAN, and EUGENIO ABAY, and as grounds therefore, alleges as follows:

## INTRODUCTION

1. This is a civil rights action on behalf of Mr. Johnson whose rights under the Fourth Amendment to the United States Constitution were violated when he was illegally seized by City of Miami Beach police officers. Defendant police officers planted drugs on Mr. Johnson, battered Mr. Johnson by way of excessive force, and falsely arrested and imprisoned him, causing him to be wrongfully detained for months as a result of a malicious prosecution that they caused.

2. Mr. Johnson seeks redress for the violations of his rights, privileges, and immunities as guaranteed by the Civil Rights Act of 1871, 42 U.S.C §1983, Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981, *et seq.*, as amended, the Fourth Amendment to the United States

1 | P a g e

Constitution, and the laws of the State of Florida.

## JURISDICTION AND VENUE

3. Jurisdiction is founded upon 28 U.S.C. § 1331 and 28 U.S.C. §§ 1343 (a)(3) and (4), as this action seeks redress for the violation of Plaintiff's Constitutional and Civil Rights.

4. Supplemental jurisdiction, and joinder of parties for additional state law claims is proper pursuant to 28 U.S.C. §1367(a) because they form part of the same case or controversy. Plaintiff asserts multiple state tort law claims.

5. Venue is properly brought in the Southern District of Florida under 28 U.S.C. 1391(b) because it is the district in which all of the events or omissions establishing the Plaintiff's claims occurred.

6. All conditions precedent to the maintenance of this action have been performed or have occurred prior to its institution including those set forth in Florida Statute Chapter 768.

## PARTIES

7. At all times material hereto, Mr. Johnson, was and is a resident of Miami-Dade County, Florida, of African American descent, and *sui juris*.

8. Defendant, The City of Miami Beach (the "City"), is a municipality duly incorporated and existing under the laws of the State of Florida. The City established and maintains the Miami Beach Police Department ("MBPD"), as a constituent department or agency. The City is responsible, through its officers, employees, servants, and agents, for enforcing the regulations of the City and for ensuring that its officers, employees, servants, and agents obey the laws of the State of Florida and the United States.

9. The City had a pattern and practice and/or custom and policy of police misconduct, failing to properly train and supervise their officers, negligently hiring and retaining officers, and

**Rodal Law, P.A.**
5300 N.W. 33rd Ave., Suite 219 ● Ft. Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

using excessive force against citizens, specifically those of African American Descent.

10. Defendant, CHRISTOPHER AGUILA ("Aguila") is or was, at all times material hereto, an employee of the City employed as a police officer with MBPD (#01048). Upon information and belief, Aguila is a resident of Miami-Dade County, Florida, is over eighteen (18) years of age and is otherwise *sui juris*. At all times material hereto, Aguila was an employee and a sworn law enforcement officer of MBPD and is being sued in his individual capacity. At all times material hereto Aguila was acting as an agent and employee of the City and was acting under the color of state law.

11. Defendant, JUAN BALCIERO ("Balciero") is or was, at all times material hereto, an employee of the City employed as a detective with MBPD (#00873). Upon information and belief, Balciero is a resident of Miami-Dade County, Florida, is over eighteen (18) years of age and is otherwise *sui juris*. At all times material hereto, Balciero was an employee and a sworn law enforcement officer of MBPD and is being sued in his individual capacity. At all times material hereto Balciero was acting as an agent and employee of the City and was acting under the color of state law.

12. Defendant, ROGER GAITAN ("Gaitan") is or was, at all times material hereto, an employee of the City employed as a detective with MBPD (#01025). Upon information and belief, Gaitan is a resident of Miami-Dade County, Florida, is over eighteen (18) years of age and is otherwise *sui juris*. At all times material hereto, Gaitan was an employee and a sworn law enforcement officer of MBPD and is being sued in his individual capacity. At all times material hereto Gaitan was acting as an agent and employee of the City and was acting under the color of state law.

13. Defendant, EUGENIO ABAY ("Abay") is or was, at all times material hereto, an

**Rodal Law, P.A.**
5300 N.W. 33rd Ave., Suite 219 ● Ft. Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

employee of the City employed as a police officer with MBPD (#01111). Upon information and belief, Abay is a resident of Miami-Dade County, Florida, is over eighteen (18) years of age and is otherwise *sui juris.* At all times material hereto, Abay was an employee and a sworn law enforcement officer of MBPD and is being sued in his individual capacity. At all times material hereto Abay was acting as an agent and employee of the City and was acting under the color of state law.

14. In connection with the acts, practices and violations alleged below, Aguila, Balciero, Gaitan and Abay, have each, acting within the course and scope of their employment for the City and under color of law, directly violated Mr. Johnson's clearly established constitutional rights, as well as statutory and common law duties owed to Mr. Johnson.

## BACKGROUND AND GENERAL ALLEGATIONS

15. Mr. Johnson provides in this Background and General Allegations section the general substance of certain factual allegations. Mr. Johnson does not intend that this section provide in exact detail, or necessarily in chronological order, any or all allegations. Rather, Mr. Johnson intends that this section merely provide Defendants fair notice of the general nature and substance of his allegations.

16. On March 24, 2017, Mr. Johnson, who was enjoying what should have been a romantic weekend with his girlfriend, visited a local Miami Beach business. During his approach to the business, Mr. Johnson sensed that he was being watched and followed by two men. Feeling an overwhelming sense that he was about to be robbed, Mr. Johnson attempted to evade his pursuers, even seeking temporary refuge in a friend's home.

17. Soon thereafter, when Mr. Johnson continued on his way to the business, the two men—who had apparently waited while Mr. Johnson was in his friend's home—approached Mr.

4 | P a g e

**Rodal Law, P.A.**
5300 N.W. 33rd Ave., Suite 219 ● Ft. Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

Johnson and asked if he had any "white" on him. Mr. Johnson, familiar with the term "white" as street slang for the drug cocaine, immediately responded in the negative and attempted to briskly walk away.

18.     Mr. Johnson then proceeded to enter the store "Aladdin," which is located at 857 Washington Avenue, Miami Beach, Florida. Moments after entering Aladdin, Mr. Johnson was attacked without reason by a group of men.

19.     Mr. Johnson would come to learn that these attackers were in fact officers of MBPD's Crime Suppression Team ("CST"), who had come to arrest him for an alleged drug sale to the two men who were undercover MBPD officers, Balciero, and Gaitan.

20.     During the attack, Mr. Johnson was violently thrown against the store's counter, breaking the store's merchandise. Officers aggressively pulled Mr. Johnson's hands behind his back while he was being attacked and attempting to stabilize himself. During this arrest, and despite being certain he had done nothing wrong, Mr. Johnson repeatedly asked the officers why he was being arrested.

21.     The men who had approached Mr. Johnson for "white" were in reality undercover MBPD officers Balciero and Gaitan. These officers alleged that Mr. Johnson sold them cocaine and that he was in possession of "marked bread," referring to $80.00 in marked bills. Mr. Johnson believes that while the officers were aggressively slamming him into Aladdin's counter, they inserted the "marked bread" on his persons and Balciero and Gaitan had in their possession a bag they claimed they purchased from Mr. Johnson.

22.     Mr. Johnson was then transported to the MBPD and instructed to enter one of their holding cells. Confused as to why he had been arrested, Mr. Johnson repeated asked the officers the reasons leading to his arrest. Despite there being more than five officers present at this time,

5 | P a g e

**Rodal Law, P.A.**
5300 N.W. 33rd Ave., Suite 219 ● Ft. Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

Mr. Johnson did not receive a single response.

23. In an attempt to humiliate Mr. Johnson, who had been thoroughly searched at the scene of his arrest, the officers instructed and forced Mr. Johnson to remove his shoes. The officers then began circling Mr. Johnson—similar to predators circling their prey—and continued to instruct him to enter the holding cell. Mr. Johnson's fear for his safety and his freedom grew exponentially and he naturally continued to question the purpose of his arrest.

24. As Mr. Johnson walked towards the cell in an effort to comply with the officers' request, a big, bald officer roughly pushed him into the cell. Mr. Johnson had now complied with the requests of the officers and had yet to receive a single response to his several pleas. However, this was not enough for Aguila.

25. Footage from body cameras worn by the officers shows that after he was already in the holding cell, Aguila proceeded to forcefully elbow Mr. Johnson in the face. The strike was so hard that Mr. Johnson stumbled and collapsed on the floor, landing unconscious. While Mr. Johnson was unconscious, the officers deceptively yelled "stop resisting" to justify their preceding and forthcoming actions. Abay, unprovoked and unnecessarily, punched Mr. Johnson with such force that it brought him back to consciousness.

26. Mr. Johnson awoke to find that he was restrained on the floor with a third officer sitting on top of him restricting his movements. This officer was aggressively pinning down Mr. Johnson's arms as he sat on top of him. Mr. Johnson was dazed, confused, and clearly unable to move. However, this did not stop the officers from continuing to yell "stop resisting." As can be seen via body cam footage, statements made by the officers in their reports are contradictory to the footage.

27. Following this assault, Mr. Johnson was forced to stand up and walk to another part

Rodal Law, P.A.
5300 N.W. 33rd Ave., Suite 219 ● Ft. Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

of the precinct. Mr. John was in absolute horror and confusion as to why he had been arrested as he had yet to receive a response to his questions. As the officers feigned empathy and requested medical assistance for injuries they themselves caused Mr. Johnson, Mr. Johnson demanded to know which officers assaulted him. Detective Aguila proudly boasted that he was the one who initially assaulted Mr. Johnson, explaining that he hit Mr. Johnson because he was "disrespectful" and that he doesn't "listen."

28. As a result of the officers' actions, Mr. Johnson suffered and continues to suffer countless injuries.

29. Despite the overwhelming video, audio, paper, and testimonial evidence, the officers, specifically Detectives Aguila and Abay, continued to be employed by the City.

30. Mr. Johnson was in jail for many months as a result of the false arrest and malicious prosecution.

31. Mr. Johnson was charged under criminal case number F-17-005772.

### COUNT I
### Fourth Amendment - 42 U.S.C. §1983
### Against Defendants, Balciero, and Gaitan

32. Plaintiff hereby incorporates paragraphs 1 through 31 as if fully set forth herein.

33. At all times material hereto, Mr. Johnson had a constitutionally protected right to be free from unreasonable searches and seizures or from being subjected to a seizure or arrest without probable cause and maintained the right to be free from unlawful assault, protected rights under the Fourth and Fourteenth Amendments of the United States Constitution.

34. On March 24, 2017, Defendants, Balciero, and Gaitan, unlawfully detained and deprived Mr. Johnson of his liberty, against his will and without legal authority to do so.

35. At no time did Defendants, Balciero, and Gaitan have any reasonable or articulable

**Rodal Law, P.A.**
5300 N.W. 33rd Ave., Suite 219 ● Ft. Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

suspicion or probable cause which would support a constitutional seizure or arrest of Mr. Johnson.

36. On March 24, 2017, notwithstanding having no reasonable or articulable suspicion, and without probable cause, Balciero, and Gaitan caused Mr. Johnson to be detained, arrested and searched, all in violation of clearly established law.

37. At all material times, any reasonably competent officer having a reasonable degree of training and expertise should have known that there was no constitutional or legally justifiable basis to arrest Mr. Johnson.

38. At all material times, it was a clearly established violation of Mr. Johnson's constitutional right to be free from unreasonable searches and seizures to be subjected to a search and arrest, when no reasonable or articulable suspicion or probable cause of any criminal activity existed to seize or arrest Mr. Johnson.

39. At all material times, Balciero, and Gaitan, in arresting Mr. Johnson concealed, suppressed, omitted and mischaracterized material facts/evidence and statements of which they had knowledge, in violation of Mr. Johnson's rights of due process.

40. At all material times, Balciero, and Gaitan did knowingly, or with reckless disregard for the truth, prepare, caused to be prepared, or participated in the preparation of an intentionally false and misleading report to support their unconstitutional arrest and search of Mr. Johnson.

41. At all material times, any reasonably competent law enforcement officer with adequate training should have known that the actions being taken in regards to the arrest and search of Mr. Johnson were improper, unconstitutional, and likely to result in the violation of the constitutional rights of Mr. Johnson.

42. On March 24, 2017, Defendants, Aguila, and Abay intended to cause, and did

**Rodal Law, P.A.**
5300 N.W. 33rd Ave., Suite 219 ● Ft. Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

cause, offensive contact and unconsented touching of the body of Mr. Johnson, while acting under the color of law.

43. At all material times, it would have been readily apparent to a reasonably competent and trained police officer, having due regard for DUQUESNE's constitutional rights, that the use of physical force employed against DUQUESNE, without him offering any physical threat or resistance, was unjustified and was in violation of clearly established law and DUQUESNE's constitutional rights.

44. Defendants' acts violated Mr. Johnson's clearly established Fourth Amendment rights, and every reasonable police officer would have understood that what he did violated those rights.

45. As a direct and proximate result of the false imprisonment, assault, and battery, Mr. Johnson has suffered pain and suffering, mental anguish, emotional distress, and loss of capacity for the enjoyment of life.

**WHEREFORE** Plaintiff, Mr. Johnson, seeks entry of final judgment against Defendants for compensatory and punitive damages, as well as, costs, and attorney fees and such other relief that the Court deems just and proper.

### COUNT II
### Fourth Amendment - 42 U.S.C. §1983
### Against Defendants, Aguila, and Abay

46. Plaintiff hereby incorporates paragraphs 1 through 31 as if fully set forth herein.

47. At all times material hereto, Mr. Johnson had a constitutionally protected right to be free from the use of excessive force without justification.

48. On March 24, 2017, Defendants, Aguila and Abay intended to cause, and did cause, offensive contact and unconsented touching of the body of Mr. Johnson, while acting under the

**Rodal Law, P.A.**
5300 N.W. 33rd Ave., Suite 219 ● Ft. Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

color of law.

49. Aguila and Abay punched Mr. Johnson for no reason.

50. At all material times, it would have been readily apparent to a reasonably competent officer, having due regard for Mr. Johnson's constitutional rights, that the use of physical force employed against Mr. Johnson, who was merely verbally expressing criticism, without offering any physical threat or resistance, was unjustified and was in violation of clearly established law. At all material times, any reasonably competent officer having a reasonable degree of training and expertise, should have known that there was no constitutional or legally justifiable basis to use excessive force against Mr. Johnson.

51. At no time did Defendants, Aguila and Abay have any reasonable or articulable suspicion or probable cause which would support a constitutional seizure or battery of Mr. Johnson.

52. At all material times, Aguila and Abay, in punching Mr. Johnson concealed, suppressed, omitted and mischaracterized material facts/evidence and statements of which they had knowledge, in violation of Mr. Johnson's rights of due process.

53. At all material times, Aguila and Abay did knowingly, or with reckless disregard for the truth, prepare, caused to be prepared, or participated in the preparation of an intentionally false and misleading report to support their unconstitutional beating of Mr. Johnson.

54. At all material times, any reasonably competent law enforcement officer with adequate training should have known that the actions being taken in regards to the use of excessive force against Mr. Johnson were improper, unconstitutional, and likely to result in the violation of the constitutional rights of Mr. Johnson.

55. Defendants' acts violated Mr. Johnson's clearly established Fourth Amendment

10 | P a g e

**Rodal Law, P.A.**
5300 N.W. 33rd Ave., Suite 219 ● Ft. Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

rights, and every reasonable police officer would have understood that what he did violated those rights.

56. As a direct and proximate result of the wrongful conduct of Aguila and Abay, the constitutional rights of Mr. Johnson were violated and abridged, and he suffered emotional distress, public humiliation and embarrassment, damage to his good name and reputation, loss of personal liberty, and sustained other general damages.

57. As a direct and proximate result of the unlawful battery, Mr. Johnson has suffered pain and suffering, mental anguish, emotional distress, and loss of capacity for the enjoyment of life.

**WHEREFORE** Plaintiff, Mr. Johnson, seeks entry of final judgment against Defendants for compensatory and punitive damages, as well as, costs, and attorney fees and such other relief that the Court deems just and proper.

## COUNT III
## 42 U.S.C. §1983
### Against Defendant, the City of Miami Beach

58. Plaintiff hereby incorporates paragraphs 1 through 31 as if fully set forth herein.

59. This is an action brought against the City pursuant to the United States Constitution Amendments IV and XIV in violation of 42 U.S.C. § 1983.

60. Prior to March 24, 2017, The City developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of persons in the community, which caused the violation of Mr. Johnson's constitutional rights.

61. The City maintained a policy and/or custom of inadequately and improperly investigating citizen complaints of police misconduct and officers' use of excessive force, and/or destroying evidence particularly in the form of cell phone cameras and said acts of misconduct

**Rodal Law, P.A.**
5300 N.W. 33rd Ave., Suite 219 ● Ft. Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

were tolerated and not reprimanded by the City. Thus, the City inadequately discouraged constitutional violations perpetrated by its law enforcement officers and ratified improper conduct and use of excessive force.

62. The City has a history of excessive force and Constitutional rights violations by their officers, and failed to discipline, correct the misconduct, or properly train and/or supervise officers; therefore, exhibiting deliberate indifference to the constitutional rights of persons in the community, specifically, Mr. Johnson whose constitutional rights were violated pursuant to the United States Constitution, and he was ultimately deprived of his bodily integrity.

63. As a result of the above-mentioned polices and customs, the City's officers believed that their inappropriate actions would not be subject to proper monitoring by supervisors, and that misconduct would not be subject to investigation nor sanction but would instead be tolerated by the City.

64. The above facts denote a deliberate indifference on the part of the City policy makers and custom enforcers, to uphold the constitutional rights of citizens of the City, including Mr. Johnson, in particular, citizens' right to be free from excessive force, which actually and proximately caused violations of Mr. Johnson's constitutional rights guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.

65. Mr. Johnson has ongoing and continuous permanent damages and injuries and as such is entitled to recovery.

66. As a direct and proximate result of the unlawful battery, Mr. Johnson has suffered pain and suffering, mental anguish, emotional distress, and loss of capacity for the enjoyment of life.

**WHEREFORE** Plaintiff, Mr. Johnson, seeks entry of final judgment against the City for

**Rodal Law, P.A.**
5300 N.W. 33rd Ave., Suite 219 ● Ft. Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

compensatory and punitive damages, as well as, costs, and attorney fees and such other relief that the Court deems just and proper

### COUNT IV
### False Imprisonment – State Tort
### Against the City, Balciero, and Gaitan

67. Plaintiff hereby incorporates paragraphs 1 through 31 as if fully set forth herein.

68. This is an action, under the common law of the State of Florida, for false arrest. Such claims arise from a common nucleus of operative facts as the violations of 42 U.S.C. § 1983, as set forth above.

69. On or about March 24, 2017, officers acting in the course and scope of their employment as a police officer for the City, and with malice, bad faith or wanton or willful disregard for the safety of Mr. Johnson's well-being, planted or otherwise fabricated evidence on Mr. Johnson causing him to be falsely arrested and detained.

70. The officers unlawfully caused Mr. Johnson to be arrested, detained, and deprived Mr. Johnson of his liberty, against his will and without legal authority to do so, despite his desires to leave. The officers' actions of causing Mr. Johnson to be arrested were unreasonable and unwarranted under the circumstances, and were against Mr. Johnson's will, and without legal authority.

71. The City is responsible for the false arrest of Mr. Johnson in that the false arrest was intentional and was committed within the course and scope of the MBPD arresting officers' employment with MBPD, such that the doctrine of respondeat superior applies to this action. "Under Florida law, an employee acts within the scope of his employment 'if his act is of the kind he is employed to perform, it occurs substantially within the time and space limits of employment and it is activated at least in part by a purpose to serve the master. *Lozada v. Hobby Lobby Stores,*

13 | P a g e

**Rodal Law, P.A.**
5300 N.W. 33rd Ave., Suite 219 ● Ft. Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

*Inc.*, 702 Fed. Appx. 904, 909 (11th Cir. 2017)(internal citations omitted).

72. As a direct and proximate result of the false imprisonment, Mr. Johnson has suffered bodily injury, pain and suffering, mental anguish, loss of capacity for enjoyment of life, lost wages, and loss of ability to earn money. These injuries and losses are permanent and continuing, and Mr. Johnson will suffer such losses in the future.

73. Plaintiff has complied with all conditions precedent pursuant to Fla. Stat. 768.28[1] prior to filing this action.

**WHEREFORE** Plaintiff, Mr. Johnson, seeks entry of final judgment against Defendants, The City of Miami Beach, Juan Balciero, and Roger Gaitan for compensatory and punitive damages, as well as, costs, and such other relief that the Court deems just and proper.

## COUNT V
## Civil Battery– State Tort
### Against all Defendants

74. Plaintiff hereby incorporates paragraphs 1 through 31 as if fully set forth herein.

75. This is an action, under the common law of the State of Florida, for battery. Such claims arise from a common nucleus of operative facts as the violations of 42 U.S.C. § 1983, as set forth above.

76. The conduct of Officers Aguila, Balciero, Gaitan, and Abay, on March 24, 2017, in illegally arresting Mr. Johnson, and employing excessive force to do so, was intentional and intended to cause a harmful or offensive contact with the person of Mr. Johnson.

77. The conduct of Officers Aguila, Balciero, Gaitan, and Abay was committed within

---

[1] The "argument that bad faith is inherent in Plaintiff's claim against the County for false arrest and imprisonment—and that the claim must therefore be dismissed under § 768.28(9)—is without merit. *Vega v. Enamorado,* 2007 WL 9702731, at fn. 9 (S.D. Fla. 2007)(Ungaro, J.)

14 | P a g e

**Rodal Law, P.A.**
5300 N.W. 33rd Ave., Suite 219 ● Ft. Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

the course and scope of their employment with MBPD.

78. Defendant, the City, is responsible for the battery committed by Officers Aguila, Balciero, Gaitan, and Abay upon the person of Mr. Johnson, in that the civil battery was intentional and was committed within the course and scope of these officers' employment with MBPD, such that the doctrine of respondeat superior applies to this action.

79. As a direct and proximate result of the battery alleged above, Mr. Johnson suffered bodily injury and resulted in pain and suffering, mental anguish, loss of capacity of enjoyment of life, lost wages and loss of ability to earn money. These injuries and losses are permanent and continuing, and Mr. JOHNSON will suffer such losses in the future.

**WHEREFORE**, Plaintiff, Mr. Johnson, seeks entry of final judgment against Defendants, The City of Miami Beach, Officers Aguila, Balciero, Gaitan, and Abay for compensatory and punitive damages, as well as, costs, and such other relief that the Court deems just and proper.

## COUNT VI
### Civil Battery– State Tort
**Against Aguila and Abay**

80. Plaintiff hereby incorporates paragraphs 1 through 31 as if fully set forth herein.

81. This count is in the alternative as permitted under Fed. R. Civ. P. 8, and within the purview of *McGhee v. Volusia County*, 679 So. 2d 729 (Fla. 1996).

82. On or about March 24, 2017, Officers Aguila and Abay, with the intention of assaulting Mr. Johnson, did use excessive and unwarranted force against Mr. Johnson.

83. Officers Aguila and Abay's actions of intentionally using excessive force against Mr. Johnson were unreasonable, unwarranted, without probable cause and without legal authority.

84. As a direct and proximate result of Officers Aguila and Abay's excessive force, Mr. Johnson has suffered pain and suffering, mental anguish, emotional distress, and loss of capacity

**Rodal Law, P.A.**
5300 N.W. 33rd Ave., Suite 219 ● Ft. Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com

for the enjoyment of life.

**WHEREFORE** Plaintiff, Mr. Johnson, seeks entry of final judgment against Defendants, Aguila and Abay, for compensatory and punitive damages, as well as, costs, and attorney fees and such other relief that the Court deems just and proper.

## VERIFICATION

I, Richard Christopher Johnson have reviewed this Complaint. I have personal knowledge as to the facts concerning myself in the Complaint, and I know or believe them to be true. As to the allegations of which I do not have personal knowledge, I believe them to be true based on information and belief.

*Richard johnson (Sep 22, 2018)*

Richard Christopher Johnson

## DEMAND FOR JURY TRIAL

Plaintiff, Mr. Johnson, hereby demands a trial by jury of all issues so triable.

Respectfully Submitted,

/s/ *Yechezkel Rodal*
Yechezkel Rodal, Esq.
Florida Bar No.  091210
Chezky@Rodallaw.com
Sonja Cajuste, Esq.
Florida Bar No.  102983
Sonja@Rodallaw.com
Rodal Law, P.A.
5300 N.W. 33rd Ave., Suite 219
Ft. Lauderdale, Florida 33309
Telephone: (954) 367-5308
Facsimile:  (954) 900-1208

*Counsel for Plaintiff*

**Rodal Law, P.A.**
5300 N.W. 33rd Ave., Suite 219 ● Ft. Lauderdale, Florida 33309 ● Telephone (954) 367-5308 ● Facsimile (954) 900-1208
www.Rodallaw.com